CARPENTER *v.* CARPENTER.

JUDGMENTS—RES JUDICATA—EJECTMENT.

A woman who is present, participating in and conducting the defense, at the trial of an action of ejectment against her tenant and her husband, is bound by the judgment.

Error to Ingham; Wiest, J. Submitted November 4, 1903. (Docket No. 85.) Decided April 26, 1904.

Ejectment by Cora M. Carpenter against Frank L. Carpenter and Lucy C. Jones, impleaded with others. From a judgment for defendants on verdict directed by the court, plaintiff brings error. Affirmed.

*Q. A. Smith* and *O. J. Hood*, for appellant.

*Frank L. Carpenter*, for appellees.

MOORE, C. J. This action is ejectment, wherein plaintiff claims title in fee to an undivided fifth of lot 10, the interest inherited by Miriam Carpenter, and claimed to have been deeded to Abigail C. Rogers, and through *mesne* conveyances to plaintiff. The common source of title of lots 10 and 12 was Benjamin Carpenter, who died intestate in 1859, leaving a widow, Maria, and five children, Miriam, Lucy, John, Augustus, and Frank. Three ejectment suits have been tried in the Ingham circuit court wherein it is claimed the title to Miriam's interest in these lots has been litigated:

On June 7, 1887, Lucy and Frank brought ejectment for this interest in the south three acres of lot 10 against John I. Carpenter and one Sautelle, claiming by devise from their mother, claiming she acquired it by adverse possession; and on June 6, 1888, recovered a judgment against them, from which no appeal was taken, and under which they have ever since held possession.

On September 14, 1893, Cora M. (John's wife and grantee) brought ejectment for this interest in lot 12 against Augustus and his wife, wherein the defendants recovered judgment, which was reversed by this court (see 119 Mich. 167 [77 N. W. 703]), and again tried, when plaintiff recovered a judgment, which was reversed by this court (126 Mich. 217 [85 N. W. 576]).

On March 29, 1899, Cora M. brought ejectment for this interest in lot 10 against Lucy and Frank, who recovered judgment on March 14, 1901, reversed by this court on March 26, 1902 (130 Mich. 213 [89 N. W. 717]), and again tried in June, 1902, when defendants again recovered judgment. The case is brought here by writ of error.

A reference to the cases as reported in 126 Mich. 217 (85 N. W. 576), and 130 Mich. 213 (89 N. W. 717), will make a long statement here unnecessary. Upon a second trial of this case, the trial judge was of the opinion the decision in *Carpenter* v. *Carpenter*, 126 Mich. 217 (85 N. W. 576), was controlling, and, because of the decision in 1888 in the case of *Carpenter* v. *Carpenter and Sautelle*, the question was *res adjudicata.*

Upon the part of the appellant it is insisted the record upon this trial as to what was litigated in the case tried in 1888 is very different from the record which was before the court when the opinion was written by Justice Hooker, reported in 126 Mich. Counsel put the question in their brief:

" Are the defendants in this action, who, as plaintiffs in the former action, recovered against John I. Carpenter and Llewellyn Sautelle on the theory that John was asserting a title in the land in himself, and that Sautelle was his tenant, entitled now to use the judgment so obtained as a bar to this plaintiff's action on the present theory that John was her agent and that Sautelle was her tenant ?"

Counsel say the former judgment binds only the parties thereto, and—

" The force and effect of this judgment is that the plain-

tiff was neither a party nor represented by a party in this former action. The anomalous situation is that defendants have introduced as an estoppel against plaintiff's right of action in this case a judgment in a former case in which it was found and determined by the jury that she was neither a party nor represented by a party. In other words, they seek to bar her present right of action by a judgment which determined that John was asserting a title to the premises in himself, and not in his wife, and had put in possession his own tenant, and not a tenant for his wife. They have introduced evidence of a judgment which they only recovered by convincing the jury that John was not acting as agent for his wife, as a bar to her right of action on the present theory that he was acting as her agent. The defendants have introduced evidence of this judgment as an estoppel against plaintiff's right to recover in this case. We deny that the judgment is any evidence of an estoppel against the plaintiff."

In the ejectment suit tried in 1888, a plea of the general issue was filed, signed by John I. Carpenter *in pro. per.* and as attorney for defendant Sautelle, which plea John I. Carpenter says was written by H. B. Carpenter. It was the claim of the plaintiffs in that case that they were the owners of the interest in the land; that Sautelle was in actual possession; and that John I. Carpenter, though not in actual possession, asserted ownership, so that it was necessary to make him a party to the record; and, as proof of his assertion of ownership, it was claimed he leased the premises in his own name to Sautelle, and put him in possession. It was also claimed that a deed running to John I. Carpenter was upon record, that no deed from himself to his wife was recorded when the suit was brought, and that the first knowledge of such a deed plaintiffs had was when it was claimed upon the trial such a deed existed. It was also shown that the defense was conducted by John I. Carpenter and H. B. Carpenter as attorneys. There was testimony that plaintiff was present during the whole trial, and sat by the attorneys for the defendants. On the part of the defendants it was claimed plaintiffs did not own the interest in the land for which suit was brought, but that it was owned by Mrs. Carpen-

ter, and that Sautelle was a tenant under her. It was further claimed that John I. Carpenter was not claiming to be the owner, that he was not in possession, and that in making the lease to Sautelle he was acting as agent for his wife, and that Sautelle was her tenant, and not his. John I. Carpenter and Cora M. Carpenter were both sworn as witnesses, and their testimony tended to establish the defense as stated above. Among other things, Mrs. Carpenter testified:

" *Q.* Sautelle is, then, your tenant, is he?

"*A.* Sautelle is not a tenant.

" *Q.* Was at the time this deed was made?

"*A.* He was at that time. He was the first tenant I had on the place. * * * Mrs. Nellie Bowman is my tenant there now. I never saw the original lease made by my husband to Sautelle. I did not consider it necessary to see it. He made the second lease. I have not seen that. I did not consider it necessary. I don't know where it is. I don't know where either lease is. They are in the hands of the parties. I think Mr. Carpenter has Mrs. Bowman's lease to present in the case today. I think he borrowed it of her for that purpose,—the original lease.

" *Q.* What did you have to do with taking possession over there, in the first place?

" *A.* Mr. Carpenter and I went out riding one day, and we drove up that street to the old house. It was apparently a deserted house. There was nothing there except one stove, as far as he could see. When he went away he took the key, and brought it to me. After that I authorized him to take possession of it. I knew who his tenant was to be. I was present myself when the bargain was made; fixed the price myself; delivered the key to Sautelle at the wheelbarrow works in Lansing. There was a written lease made. This occurred on Saturday, the 7th of May, and there was a verbal lease made that day with Mr. Sautelle fixing the price. Mr. Carpenter went home and drew a written lease, and took it over to Sautelle. The written lease I never saw, but I suppose it embodied the terms that we made in the other lease.

" *Q.* But you don't know anything about it? You did not see it while he was drawing it, did you,—did not read it?

"*A.* I don't think that he drew it at the house. I think he drew it at the office."

It is true the jury, in order to render the verdict they did against Mr. Carpenter, must have found he was asserting ownership, and as to that feature of the case accepted the version of the plaintiffs. The question remains, Does the verdict against Carpenter and Sautelle, which remains undisturbed, bind Mrs. Carpenter? The case, briefly stated, is that an ejectment suit was commenced against John I. Carpenter, the husband of the plaintiff in this case, and Llewellyn Sautelle, according to her version her tenant. Mrs. Carpenter had knowledge of that litigation and participated in it. When the case was tried, Sautelle had ceased to be her tenant, and was succeeded by Mrs. Bowman, his daughter, who was in possession at the time of the trial. It is impossible to read the record and reach any other conclusion than that John I. Carpenter and his wife both participated in and conducted the defense, entering fully upon the merits, claiming the plaintiffs' case must fail because of a lack of title in themselves, and also claiming that the legal title was in Cora M. Carpenter, and for that reason the case must fail as against her tenant, Sautelle. It was claimed, in addition to the defense above stated, that as to John I. Carpenter plaintiffs had no case, because John I. Carpenter was not in possession; that he had no title, and was not asserting title in his own right. The plaintiffs obtained judgment against both defendants, from which no appeal has ever been taken. We think the plaintiff in this action is bound by the judgment in that case. See Herm. Estop. § 152; 2 Van Fleet, Former Adj. p. 1072. See, also, *Jennings* v. *Sheldon*, 44 Mich. 92 (6 N. W. 96); *Bachelder* v. *Brown*, 47 Mich. 366 (11 N. W. 200); *Estelle* v. *Peacock*, 48 Mich. 469 (12 N. W. 659); *Carpenter* v. *Carpenter*, 126 Mich. 217 (85 N. W. 576).

Judgment is affirmed.

MONTGOMERY and HOOKER, JJ., concurred. CARPENTER, J., did not sit. GRANT, J., took no part in the decision.